**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| KEEPER SECURITY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:23-cv-15557 |
| | ) | |
| JENSEN TECHNOLOGY, INC. d/b/a | ) | |
| KEEPER, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff, Keeper Security, Inc. ("Keeper"), complains of Jensen Technology, Inc. d/b/a Keeper ("Keeper.app"), as follows:

1.      Keeper has used the trademarks KEEPER® in connection with its cybersecurity business since at least 2009.  Keeper has marketed, advertised, and promoted the KEEPER® trademark through the expenditure of significant time and effort over the years to establish extensive goodwill and consumer recognition in the KEEPER® trademark.

2.      Keeper.app started using and introduced into the market the term "keeper" on its computer application, website domain and website content.  Keeper.app's "keeper" product is an all-in-one app that helps bookkeepers and accountants achieve a better month-end close for their clients.

3.       Keeper.app's use of the name "keeper" in association with its goods and services is willful infringement of the KEEPER® trademark and Keeper.app is trading off the goodwill established in the mark.

4.       This Complaint includes claims for trademark infringement under Section 43 of the Lanham Act, 15 U.S.C. § 1051 et seq. (the "Lanham Act"); for false designation of origin and

unfair competition in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a); for trademark dilution in violation of 15 U.S.C. § 1125(c); for state common law trademark infringement; and unfair competition.

## THE PARTIES

### Keeper Security, Inc.

5.     Keeper Security, Inc. is a Delaware corporation having its principal place of business located in Chicago, Illinois.

6.     Keeper is in the business of developing, marketing and selling cybersecurity software.  Keeper is a leading cybersecurity company that provides software and applications that protect the integrity of numerous businesses and consumers through safeguarding sensitive user information and mitigating the risk of data breaches.  Keeper utilizes a proprietary, secure and convenient password manager and digital vault to protect its customers' critical data and passwords.

7.     Keeper has created the world's most downloaded and preloaded password security and management solution for mobile devices and computers.

8.     Keeper sells a software product called "Keeper" for managing user passwords and private information. Keeper protects users against cybercriminals with a secure and convenient password manager. Users' passwords, logins, credit card numbers, bank accounts and other personal, sensitive, information are saved in a private digital vault that is encrypted and unbreakable.

9.     The KEEPER® trademark is associated with the Keeper products and applications sold on various platforms and internet portals.

10.     Keeper markets its products under the KEEPER® trademark.  Keeper's products have been downloaded by millions of online users and preloaded by global mobile operators and

mobile device manufacturers who recognize that Keeper is a leader in cybersecurity and the leader in password management. Online users have come to associate the "Keeper" software product with Keeper and recognize that it is the leading product in password management.

11. Keeper is the assignee and owner of the entire right, title and interest in the trademark "KEEPER", United Trademark Registration No. 3,965,190 (the "KEEPER®" trademark). (Registration Certificate attached as Exhibit A).

12. The KEEPER® trademark was registered with the United States Patent and Trademark Office ("USPTO") on May 24, 2011.

13. The KEEPER® trademark was assigned to Keeper on November 21, 2011.

14. Keeper has standing to sue for any damages and injunctive relief related to the KEEPER® trademark under the Lanham Act, Section 32(a).

**Keeper.app Inc.**

15. Jensen Technology, Inc. d/b/a Keeper is a Delaware company with its principal place of business located in Santa Monica, California.

16. Keeper.app provides an internet-based software and application that works in connection with Quickbooks and Xero to run a bookkeeping business.

17. Keeper.app operates the website keeper.app.

18. Keeper.app seeks to compete with Keeper by providing internet and application-based services using the name "keeper." Keeper.app entered the market using the "keeper" name years after Keeper introduced its KEEPER® trademark into the market.

19. Keeper.app advertises and sells its products and applications on its website, "keeper.app", as well as other internet portals, using the term "keeper" in direct competition with the KEEPER® trademark.

## JURISDITION AND VENUE

20.    This Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332 and 1338(a) and (b), 15 U.S.C. § 1121 and other applicable statutes as the claims arise from the Lanham Act.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1367.

21.    This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because Keeper resides in Illinois, Keeper.app is a Delaware corporation residing in California and the amount in controversy exceeds $75,000.

22.    To the extent Keeper's claims arise from Illinois statutory and/or common law, this Court has proper ancillary jurisdiction and supplemental jurisdiction in accordance with 28 U.S.C. § 1367(a) in that the state law claims have a logical relationship to the aggregate core of operative facts relating to Keeper's claims under the Lanham Act.  The state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative fact.

23.    This Court has personal jurisdiction over Keeper because Keeper is a corporation conducting business in this state and is in this district.

24.    This Court has personal jurisdiction over Keeper.app because Keeper.app is a corporation conducting business in and advertising the "keeper" name in this state and in this district.

25.    Keeper.app conducts business through the website keeper.app.  Keeper.app's products and applications are available for demo and purchase through its website, including to Illinois residents of this judicial district.

26.     Keeper.app has known of Keeper's intellectual property rights and continued to use the KEEPER® trademark to benefit from the goodwill and reputation of Keeper.  By doing so, Keeper.app has intentionally caused harm to Keeper in this district.

27.     Keeper.app has purposefully and willfully directed its intentional misuse and infringement of the KEEPER® trademark in the State of Illinois (where Keeper is located), with knowledge that Keeper's injury would occur in the State of Illinois.

28.     This Court has personal jurisdiction over Keeper.app, as Keeper.app is engaged in trademark infringement, unfair competition and trademark dilution directed at (and/or which has caused damage to) persons and entities residing in, located in or doing business in this district.

29.     Keeper.app conducts business over keeper.app, including with customers in this district.  Keeper.app transacts business in the state of Illinois, and in this judicial district by, among other things, selling software and applications that provide bookkeeping services to residents of Illinois.

30.     Keeper.app has purposefully availed itself of the privilege of conducting business in this judicial district and has established sufficient minimum contacts with the State of Illinois such that it should reasonably and fairly anticipate being sued in a court in Illinois.

31.     Venue in this district is proper pursuant to 28 U.S.C. § 1391 (b) and (c).

32.     Keeper resides in the state of Illinois and conducts business in this jurisdiction.

33.     Keeper.app conducts business through the website keeper.app.  Keeper.app's products are available for purchase through this website, including to residents of this judicial district.

34.     Keeper.app has purposefully and willfully directed its intentional misuse and infringement of the KEEPER® trademark at the State of Illinois (where Keeper is located), with knowledge that Keeper's injury would be felt in the State of Illinois.

35.     Keeper.app is an entity which is transacting business in Illinois and because a substantial part of the events giving rise to the claims occurred, and a substantial portion of the affected interstate trade and commerce described below has been and is being carried out in the Northern District of Illinois.

## BACKGROUND OF FACTS

36.     United States Federal Trademark Registration No. 3,965,190 for the KEEPER® trademark is set forth below:



**The KEEPER® Trademark**

37.     The KEEPER® trademark has become incontestable due to Keeper's continuous use of the trademarks for over five years since the mark was granted federal registration on May

24, 2011. Keeper filed a Declaration of Incontestability with the USPTO of the KEEPER®
trademarks under Section 15.

38.     Keeper also owns broad common law rights to the KEEPER® trademark as a result
of its investment over the years in marketing, advertising and promotion. KEEPER® is symbolic
of extensive goodwill and customer recognition built-up through its significant expenditures of time
and effort by Keeper.

39.     Keeper maintains a website at www.keepersecurity.com.     The KEEPER®
trademark has been prominently displayed in association with Keeper's cybersecurity products:





40.     An example of the use of the KEEPER® trademark is set forth on its website
www.keepersecurity.com:



41.     The KEEPER® trademark is also used in connection with mobile devices:



42.     Keeper has won awards for innovation such as being named winner of the "Most Innovative in Endpoint Security Award," the "Hot Company in Identity and Access Management" and "Cutting Edge Security Company of the Year" awards during RSA Conference 2021.

- 8 -

43.     Keeper was granted awards for the CEO of the year, CTO of the year and "Hot Company of the Year" at the Global InfoSec Awards during the RSA Conference 2022.

44.     Keeper's products are the highest rated in the industry across G2, Trustpilot, PCMag and U.S. News & World Report. For the last several years, Keeper has received several InfoSec Awards from Cyber Defense Magazine for its cybersecurity enterprise software.

45.     Keeper has been named PC Magazine's Best Password Manager of the Year & Editors' Choice, PCWorld's Editors' Choice and is the winner of four G2 Best Software Awards and the InfoSec Award for Best Product in Password Management for SMB Cybersecurity.

46.     The KEEPER® trademark has been prominently displayed in association with the awards granted to Keeper, its products and applications.

47.     The Keeper product is available over the Internet and various "app" stores, including Apple's App Store. The Keeper product has received thousands of five-star ratings on various app stores. For example, the latest version has received a 4.9-star rating (out of 5 stars) among user reviews on Apple's App Store:





48.    The KEEPER® trademark appears in association with the Keeper product and with Keeper Security on application platforms such as the Google Play Store as demonstrated at: https://play.google.com/store/apps/details?id=com.callpod.android_apps.keeper.

49.    The KEEPER® trademark appears in association with the Keeper product and with Keeper Security on the Microsoft application platform:



50.     Annually, Keeper spends millions of dollars on marketing and advertising of the KEEPER® trademark and to promote its product and company via Google search, the Apple App Store, the Google Play Store, public relations, outdoor advertising and other digital media.

51.     Through Keeper's extensive marketing and advertising, Keeper has obtained high rankings in the various app stores and Google search to be the first application and/or company listed when searching the word "keeper."

52.     The promotion has worked, as Keeper is the first hit on a google search:



53.     The KEEPER® trademark is prominently displayed on outdoor billboards in several states including in this district:



54.     Keeper has also advertised on television. One of Keeper's 2014 television commercials is available on YouTube at: https://youtu.be/z2EPjDqDShA.

55.     The KEEPER® trademark has never been abandoned and the registration is in full force and effect and has become incontestable pursuant to 15 U.S.C. § 1065.

56.     The KEEPER® trademark was first used in commerce in 2009 in relation to computer software for use with computers and mobile telephones, for electronic storage and encryption of passwords and private data.

57.     The KEEPER® trademark has been associated with Keeper's computer software for use with computers and mobile telephones, for electronic storage and encryption of passwords and private data products since 2009.

58.     The KEEPER® trademark has achieved secondary meaning in the relevant market.

59.     The KEEPER® trademark is distinctive of the computer software for use with computers and mobile telephones, for electronic storage and encryption of passwords and private

data products and, in the minds of the consumers, their primary significance serves to identify the source of the product and have become distinctive of the products.

60.     The KEEPER® trademark has become notorious and famous.

**Keeper.app's Improper Use of the "keeper" Trademark**

61.     Keeper.app is an alleged SOC 2 certified company that works in connection with bookkeeping software and enables its users to communicate with clients.

62.     Keeper.app was co-founded Ben Stein and Kenny Song.

63.     Keeper.app began advertising and selling its products under the "keeper" name in June of 2021.

64.     Keeper.app's use of the "keeper" name demonstrates that Keeper.app recognizes the value of the KEEPER® trademark.

65.     Keeper.app maintains a website at keeper.app.   The improper use of the term "keeper" by Keeper.app is set forth on its website keeper.app:





66.     Keeper.app promotes its product using the term "keeper" in product advertisement:



(https://www.facebook.com/groups/4423679007663470).



(https://www.linkedin.com/company/keeperhq/about/).

67.    Keeper.app is using the term "keeper" on its products, services, domain name, software application and webpage content with complete disregard for the KEEEPER trademark.

68.    Keeper.app has made a conscious and concerted effort to pass off its product as being associated with the KEEPER® trademark and using the KEEPER® trademark to trade its product.

69.    Keeper.app competes with Keeper using the KEEPER® trademark.

70.    Keeper.app's action amounts to the willful theft of the KEEPER® trademark.

**Keeper.app Promotes Security**

71.     Keeper.app advertises and has represented on its website, "docs.keeper.app/security-at-keeper", the following: "We take security very seriously at Keeper and hold ourselves to strict standards when it comes to keeping your and your client's data secure."



Keeper.app is a SOC 2 certified company that supports two factor authentication for both accounts and clients as shown on its website https://help.keeper.app/en/articles/6143609-security-at-keeper:

## Passwords and Authentication

- We use Google's Firebase for user auth management
- They are certified under major privacy and security standards, including ISO 27001, SOC 1, SOC 2, and SOC 3
- For more information on Firebase's security standards, please see this link
- Keeper supports two factor authentication for both accountants and clients.

## Standards

Keeper is SOC 2 Certified. Please contact your sales representative or CSM for more information and our accreditation report.

**Evidence of Confusion Caused by Keeper.app**

72. Keeper.app competes with Keeper.

73. The Keeper.app "keeper" products and/or services are displayed next to the KEEPER® trademark in the google results page when searching for the word "keeper."



74.     Keeper.app, through the use of the "keeper" name, is attempting to skew the search results toward Keeper.app's product and away from Keeper in the various search engines.

75.     Use of the term "keeper" by Keeper.app is likely to cause confusion with the KEEPER® trademark.

76.     Keeper.app, through the use of the "keeper" name, has adversely and materially impacted Keeper's sales of Keeper's own product.    Additionally, Keeper.app's actions have impacted the volume of website traffic and associated revenues of Keeper.

77.     Use of the term "keeper" by Keeper.app has caused actual confusion with the KEEPER® trademark.    There have been several instances of actual confusion between the Keeper.app use of the "keeper" name and the KEEPER ®trademark.

78.     Keeper has received numerous calls and emails to its customer support team thereby confusing Keeper with the Keeper.app product and company.  The instances of confusion are clearly related to Keeper.app's use of the "keeper" mark.

79.     Keeper has recorded numerous instances where people have contacted Keeper requesting support for the Keeper.app product.  This shows actual confusion due to Keeper.app's use of the "keeper" mark.

80.     Keeper has also recorded at least one instance where a Keeper.app customer has contacted Keeper complaining about the Keeper.app product.  For example, Keeper received an email.

## COUNT I: FEDERAL TRADEMARK INFRINGMENT
### (Lanham Act Section 32(a))

81.     Keeper incorporates all prior allegations as if set forth fully herein.

82.     This Court has jurisdiction over the subject matter of this claim, this being a claim of trademark infringement arising under the Trademark Laws of the United States as codified in 15 U.S.C. § 1051 et seq.

83.     Keeper owns United States Trademark Reg. No. 3,965,190 in the mark "KEEPER."

84.     The KEEPER® trademark is fanciful and arbitrary and is associated in the mind of the public exclusively with Keeper Security, Inc.

85.     Based on Keeper's extensive advertising, sales and the wide popularity of the KEEPER® mark, the KEEPER® trademark has obtained Federal Trademark Registration so that any product and advertisement bearing such trademarks is immediately associated by purchasers and the public as being a product of, and affiliated with Keeper Security, Inc.

86.     Keeper.app copied or otherwise imitated the KEEPER® trademark in connection with selling, distributing and advertising Keeper.app's products, services, and applications.

87.     Keeper.app's activities set forth herein constitute use in commerce of the KEEPER® trademark and are likely to cause confusion to consumers.

88.     Keeper.app has used the "keeper" mark without Keeper's consent or authorization. Keeper.app's use, including the advertising, sale and distribution of infringing products and applications in interstate commerce, has caused actual confusion and is likely to cause confusion and mistake in the minds of the public, leading the public falsely to believe that Keeper.app's products and applications emanate or originate from Keeper, or falsely to believe that Keeper has approved, sponsored or otherwise associated itself with Keeper.app.

89.     Keeper.app has intentionally used the KEEPER® trademark in connection with its offering for sale, sale and distribution of goods associated therewith knowing that such trademark is Keeper 's exclusive property.

90.     Keeper.app engaged in the activities involving the "keeper' name with the intent to confuse and deceive consumers into believing that Keeper.app, and the goods it sells, are in some way sponsored by, or affiliated with or associated with Keeper or its products.

91.     Keeper.app's unauthorized use of the KEEPER® mark as set forth herein has resulted in Keeper.app unfairly benefiting from Keeper's advertising and promotion and profiting from Keeper's reputation and its registered trademarks to the substantial and irreparable injury of the public, Keeper, the KEEPER® trademark and the substantial goodwill represented thereby.

92.     Keeper.app's aforesaid acts constitute trademark infringement in violation of section 32 of the Lanham Act, 15 U.S.C. § 1114.

93.     Keeper.app's acts have caused, and will continue to cause, great and irreparable injury to Keeper, and unless such acts are restrained by this Court, Keeper.app will continue such acts, thereby causing Keeper to continue to suffer great and irreparable injury.

94.     Keeper has no adequate remedy at law and is suffering irreparable harm and damage as a result of the aforesaid acts of Keeper.app in an amount to be determined at trial.

## COUNT II: UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN
### (Lanham Act Section 43(a))

95.     Keeper incorporates all prior allegations as if set forth fully herein.

96.     This Court has jurisdiction over the subject matter of this claim, this being a claim of unfair competition and false designation of origin arising under section 43(a) of the Lanham Act, codified in 15 U.S.C. § 1125(a).

97.     Keeper.app is fully aware of the popularity of the entire KEEPER application and product line and the clear association of the KEEPER® trademark with the line of cybersecurity applications and products of Keeper. Keeper.app intentionally copied and offered in interstate commerce products that infringe the KEEPER® trademark with Keeper's products and application. Keeper.app's use of the "keeper" name in association with its products and applications is confusingly similar in total image, appearance, and overall aesthetic look of the KEEPER® trademark. As a result, there have been instances of actual confusion and, therefore, the public is, and is likely to be, confused by Keeper.app's use of the "keeper" designation.

98.     Keeper.app has used in commerce, and continues to use in commerce, the "keeper" designation to unfairly benefit from Keeper's success by selling the same products bearing the same name in this jurisdiction. Keeper.app could have selected alternative names.

99.     Keeper.app has used Keeper's distinctive KEEPER® name designation on its infringing products with the express intent to pass off Keeper.app's products as those of Keeper and to cause confusion and mistake, and to deceive and mislead the purchasing public into believing that Keeper.app is authorized, sponsored, affiliated with or associated with Keeper, and to trade

upon Keeper's reputation for high-quality and to improperly appropriate to itself Keeper's valuable trademark rights.

100.     Sales of infringing products and/or services having the "keeper" name made by Keeper.app are likely to cause consumer confusion because of the similarity in appearance and look between Keeper.app's and Keeper's products and applications.   Consumers will believe that Keeper.app's products and/or services are either manufactured, licensed, affiliated with or sponsored by Keeper, or are being placed on the market with Keeper's consent and/or actual or implied authority.   As a result, Keeper has been and will continue to be irreparably injured by Keeper.app's improper acts.

101.     Keeper.app has willfully, deliberately and with predatory intent, created such confusion by copying and reproducing the distinctive KEEPER® trademark associated with Keeper's products and applications; and has advertised and sold, and threaten to advertise and sell, its products and applications so as to cause public confusion and deception.  Further, Keeper.app's sales and offers for sale of products, services and applications bearing the "keeper" name have caused and threaten to cause Keeper the loss of its valuable goodwill and reputations for making and selling distinctive, unique and high-quality cybersecurity products under the "keeper" name.

102.     Keeper.app's aforesaid acts constitute the use in commerce of false designations of origin and false and/or misleading descriptions or representations, tending to falsely or misleadingly describe and/or represent Keeper.app's products as those of Keeper in violation of section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

103.     Keeper.app's wrongful acts will continue unless enjoined by this Court.

104.     Keeper has no adequate remedy at law and is suffering irreparable harm and damage as a result of the aforesaid acts of Keeper.app in an amount to be determined at trial.

## COUNT III: TRADEMARK DILUTION
### (Federal Trademark Dilution)

105.    Keeper incorporates all prior allegations as if set forth fully herein.

106.    This Court has jurisdiction over the subject matter of this claim, this being a claim of trademark dilution arising under section 43(c) of the Lanham Act, codified in 15 U.S.C. § 1125(c).

107.    The KEEPER® trademark is distinctive, famous and widely recognized by the consuming public in the United States within the meaning of the Lanham Act.

108.    At this time, only Keeper.app knows the full extent and duration of its infringement. Keeper.app's actions have been and are willful and deliberate.

109.    Keeper's KEEPER® trademark was famous prior to the time when Keeper.app's unlawful actions are believed to have begun.

110.    Keeper.app's unlawful actions began long after Keeper's marks became famous, and Keeper.app acted knowingly, deliberately and willfully with the intent to trade on Keeper's reputation and to dilute Keeper's KEEPER® trademark.

111.    When Keeper.app's unlawful action began, Keeper's mark was widely recognized by the general consuming public of the United States as a designation of source of Keeper.

112.    For years, Keeper has advertised its products nationwide. Keeper's advertisements include print media, television ads and internet ads, which reach the general consuming public across the United States.

113.    Keeper also reaches the general public through internet channels such as YouTube. On YouTube, Keeper's username is "Keeper." There, Keeper publishes copies of its television ads and product features.

114. Keeper's publicity also extends across the nation by way of third-party awards and publications.

115. A Wikipedia webpage exists dedicated to Keeper's business.



([https://en.wikipedia.org/wiki/Keeper_(password_manager)](https://en.wikipedia.org/wiki/Keeper_(password_manager)).

116. Keeper's products are available nation-wide, at least through the Google Play Store, the Microsoft store and Apple's App Store.

117. Since the first use of the KEEPER® trademark, Keeper has spent substantial resources on advertising and developing brand recognition, including without limitation the above-mentioned examples. Keeper has received feedback showing that customers recognize its mark. By way of non-limiting example, Keeper's mark is recognized in third party publications, ratings for its software and comments posted to Keeper's YouTube page.

118.    Keeper.app's intentional and unauthorized actions are likely to cause confusion mistake, or to deceive, mislead and/or defraud consumers to believe that the substandard products sold on Keeper.app's website are genuine Keeper products. The actions complained of herein have diluted and will continue to dilute the KEEPER® trademark and is likely to impair the distinctiveness, strength and value of Keeper's marks, and injure the business reputation of Keeper and its trademark.

119.    Keeper.app's conduct has caused actual confusion and diluted the value of the Keeper marks. For example, Keeper's trademarks and business are negatively impacted when users of Keeper.app's product bearing the "keeper" name have negative experiences with the Keeper.app product.

120.    Keeper.app's conduct has caused trademark dilution of the KEEPER® trademark through the association arising from the similarity between the KEEPER® trademark and Keeper.app's use of the term "keeper," which impairs the distinctiveness of the KEEPER® trademark.

121.    Keeper.app's conduct has caused trademark dilution of the KEEPER® trademark through the association arising from the similarity between the KEEPER® trademark and Keeper.app's use of the term "keeper" which harms the reputation of the KEEPER® trademark.

122.    Keeper.app's wrongful acts will continue unless enjoined by this Court.

123.    Keeper has suffered, and will continue to suffer, substantial and irreparable harm and damage as a result of Keeper.app's dilution, in an amount to be determined at trial.

### COUNT IV: STATE COMMON LAW TRADEMARK INFRINGEMENT
### (State Common Law Trademark Infringement and Unfair Competition)

124.    Keeper incorporates all prior allegations as if set forth fully herein.

125.    This claim arises under the common law of this State relating to trademark infringement and unfair competition. This Court has jurisdiction over the subject matter of this claim pursuant to the provisions of 28 U.S.C. § 1338(b), this being a claim of unfair competition joined with a substantial and related claim under the Trademark Laws of the United States, and under 28 U.S.C. § 1367.

126.    Keeper is the owner of all right, title and interest in and to the common law "keeper" trade name, designs, symbols and logos used by Keeper by virtue of its extensive manufacture and sale of products bearing such trade names, trademarks, designations, designs, symbols and logos (collectively, Keeper's "Common Law Trademarks") as set forth in the preceding paragraphs of this Complaint. In particular, because of its enormous sales and publicity, Keeper's has acquired common law trademark rights in its "keeper" products and applications.

127.    The counterfeit and/or infringing products imported, advertised, distributed, offered for sale and sold by Keeper.app incorporate matter constituting replicas and imitations of Keeper's Common Law Trademarks. Such unauthorized use by Keeper.app of Keeper's Common Law Trademarks constitutes trademark infringement and unfair competition and is likely to cause confusion and mistake in the minds of the trade and the purchasing public as to the source of the products and to cause purchasers to believe such products are authentic products of Keeper when, in fact, they are not.

128.    Keeper.app has willfully and intentionally misappropriated one or more of Keeper's Common Law Trademarks with the intent of causing confusion, mistake, and deception as to the source of its goods and with the intent to palm off its goods as those of Keeper and to place others in the position to palm off its goods as those of Keeper, and as such, Keeper.app has committed trademark infringement and unfair competition under the common law.

129.    By such actions of infringing Keeper's Common Law Trademarks, Keeper.app is improperly trading upon the enviable reputation and goodwill of Keeper and is impairing Keeper's valuable rights in and to such trademarks.

130.    Keeper is informed and believes and thereupon alleges that Keeper.app committed the above alleged acts in conscious disregard of Keeper's rights, and Keeper is therefore entitled to exemplary and punitive damages pursuant to the common law of the State of Illinois.

131.    Keeper has no adequate remedy at law.  The conduct of Keeper.app has caused and, if not enjoined, will continue to cause, irreparable damage to Keeper's rights in and to its trademarks, and to Keeper's businesses, reputations and goodwill.

## COUNT V – ILLINOIS DECEPTIVE TRADE PRACTICES ACT
## (815 ILCS 510 ET SEQ)

132.    Keeper incorporates all prior allegations as if set forth fully herein.

133.    Keeper.app has made a concerted effort to pass of its goods as those of Keeper through the use of the KEEPER® trademark.

134.    Keeper.app's use of the "keeper" name has caused likelihood of confusion or misunderstanding as to the source, sponsorship, approval or certification of the Keeper.app products and applications.

135.    Keeper.app's use of the "keeper" name has caused likelihood of confusion or of misunderstanding as to affiliation, connection or association with or certification by another.

136.    By reason of the foregoing acts, Keeper.app has engaged in, and is continuing to engage in acts which pass off its own goods or services as those of Keeper and caused a likelihood of confusion (and actual confusion) or misunderstanding as to the source, sponsorship, approval, affiliation or connection with Keeper.

137.    Keeper has no adequate remedy at law.  The conduct of Keeper.app has caused and, if not enjoined, will continue to cause, irreparable damage to Keeper's rights in and to its trademarks, and to Keeper's businesses, reputations, and goodwill.

### COUNT VI – UNJUST ENRICHMENT

138.    Keeper incorporates all prior allegations as if set forth fully herein.

139.    By reason of the foregoing act, Keeper.app has been unjustly enriched to the detriment of Keeper. Keeper.app's retention of monies gained through its deceptive business practices, acts of deceit, and otherwise, would serve to unjustly enrich Keeper.app and would be contrary to the interests of justice.

### PRAYER FOR RELIEF

WHEREFORE, Keeper demands judgment against the Keeper.app as follows:

A.    That the Court order that Keeper.app, its officers, agents, directors, servants, employees, representatives, successors, and assigns and all persons, firms or corporations in active concert or participation with Keeper.app, be immediately and permanently enjoined from:

(1)    directly or indirectly infringing Keeper 's trademark as described above in any manner including generally, but not limited to, copying, distributing, advertising, selling, and/or offering for sale any merchandise that infringes the KEEPER® trademark including without limitation Keeper.app's products using the "keeper" name, and specifically distributing, advertising, selling and/or offering for sale unauthorized copies of the KEEPER® trademark or any other unauthorized goods that picture, reproduce, or utilize

the likenesses of or which copy or bear a substantial similarity to any of Keeper's trademarks;

(2)    using the KEEPER® trademark and trade dress rights or marks confusingly similar thereto;

using the name "keeper" on or in association with any products;

advertising (over the Internet, through catalogs or otherwise), selling, importing, exporting, using, accepting orders for or offering to sell products in conjunction with, or under, the "keeper" name and appearance; engaging in any conduct that tends falsely to represent that, or is likely to confuse, mislead or deceive purchasers, Keeper.app's customers and/or members of the public to believe that, the actions of Keeper.app, the products sold by Keeper.app or Keeper.app itself are connected with Keeper, are sponsored, approved, or licensed by Keeper, or are in some way connected or affiliated with Keeper;

causing further confusion with and injury to Keeper 's reputation, business and the KEEPER® trademark and common law trademarks, including Keeper's name and likeness or other forms of advertisement and trademarks;

(3)    otherwise competing unfairly with Keeper in any manner;

(4)    diluting and infringing the KEEPER® trademark and damaging Keeper's goodwill, reputations and businesses.

B.    That Keeper be awarded damages in an amount sufficient to compensate it for the injuries it has sustained by reason of Keeper.app's unlawful acts, including Keeper's loss of goodwill, loss of past and/or future sales and damages caused by

Keeper.app's acts of trademark and trade dress infringement, common law trademark infringement, unfair competition and trademark dilution, as well as for State common law trademark infringement, trademark dilution and unfair competition. That Keeper be awarded increased damages based upon the intentional and willful nature of Keeper.app's conduct of the kind complained of herein. That Keeper be awarded all profits received by Keeper.app from the sale of products identified or advertised through the use of identical or confusingly similar designations of the KEEPER® trademark.

C. That the Court issue an order requiring Keeper.app to pay to Keeper such damages as Keeper has sustained as a consequence of Keeper.app's infringement of the KEEPER® trademark and unfair competition and to account for all gains, profits, and advantages derived by Keeper.app from the sale of its infringing merchandise bearing the KEEPER® trademark and that the award to Keeper be trebled as provided for under 15 U.S.C. § 1117; alternatively, that Keeper be awarded statutory damages pursuant to 15 U.S.C. § 1117(c) of up to $1,000,000 for each trademark that Keeper.app has willfully counterfeited and infringed.

D. That the Court issue an order that Keeper recover the costs of this action together with reasonable attorneys' and investigators' fees and prejudgment interest in accordance with 15 U.S.C. § 1117.

E. That Keeper be awarded punitive damages for Keeper.app's willful and malicious acts of common law unfair competition.

- 30 -

F.  That Keeper.app be ordered to deliver up for destruction all advertisements, circulars, brochures and any other items in its possession, custody or control bearing the KEEPER® trademark or any other similar designations.

G.  That Keeper.app be ordered to (a) prepare and send to its customers and the general public corrective statements approved by Keeper, correcting all false statements made and all misrepresentations made concerning the KEEPER® trademark; (b) to disclaim any association between Keeper.app and Keeper and/or its products; and (c) to recall and make reasonable efforts to obtain the return of any infringing or confusingly similar products from its customers.

H.  That judgment be entered in favor of Keeper and against Keeper.app on each claim made in the Complaint.

I.  That the Court provide Keeper with such other and further relief as it deems just and proper, or that Keeper may be entitled to under the law.


## JURY DEMAND

A trial by jury is demanded on all issues triable to a jury in this case.


Respectfully submitted,

_____*/s/ Dean D. Niro*_____
Dean D. Niro
VITALE, VICKREY, NIRO, SOLON & GASEY LLP
311 S. Wacker Dr., Suite 2470
Chicago, IL 60606
Tel.:   (312) 236-0733
*dniro@vvnlaw.com*

*Attorney for Plaintiff,*
*Keeper Security, Inc.*